1 | BRUCE L. SIMON (Bar No. 96241)
bsimon@psswplaw.com
2 | ESTHER L. KLISURA (Bar No. 221171)
eklisura@psswplaw.com
3 | **PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP**
44 Montgomery Street, Suite 1200
4 | San Francisco, California 94104
Telephone: (415) 433-9000
5 | Facsimile:  (415) 433-9008

6 | *Counsel for Plaintiff and the Proposed Class*

7 | *(Additional Counsel Appear on Signature Page)*

8 |

*ORIGINAL FILED*

*07 MAY -8  PM 3: 39*

*RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA*

E-filing

9 | **UNITED STATES DISTRICT COURT**          **MEJ**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 |                                             **C 07        2466**

12 | JOSEPH T. PISCITELLO on behalf of       CASE NO.
himself and all others similarly situated,

13 |

14 |                 Plaintiff,              **CLASS ACTION COMPLAINT**

15 |         vs.                             **JURY TRIAL DEMANDED**

16 | LG.PHILIPS LCD CO., LTD.; LG.PHILIPS
LCD AMERICA, INC.; SAMSUNG
17 | ELECTRONICS CO., LTD.; SAMSUNG
ELECTRONICS AMERICA, INC.; SHARP
18 | CORPORATION, SHARP ELECTRONICS
CORPORATION; TOSHIBA
19 | CORPORATION; MATSUSHITA
ELECTRIC INDUSTRIAL CO.;
20 | PANASONIC CORPORATION OF NORTH
AMERICA; TOSHIBA MATSUSHITA
21 | DISPLAY TECHNOLOGY CO., LTD.;
HITACHI LTD.; HITACHI AMERICA LTD.;
22 | HITACHI DISPLAYS LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.; IPS
23 | ALPHA TECHNOLOGIES, LTD.; EPSON
IMAGING DEVICES CORPORATION; NEC
24 | CORPORATION; NEC LCD
TECHNOLOGIES, LTD.; NEC
25 | ELECTRONICS CORPORATION; NEC
ELECTRONICS AMERICA, INC.; NEC
26 | DISPLAY SOLUTIONS OF AMERICA,
INC.; IDT INTERNATIONAL LTD.;
27 | OREGON SCIENTIFIC, INC.; CHI MEI
OPTOELECTRONICS; CHI MEI
28 | OPTOELECTRONICS USA, INC.;
INTERNATIONAL DISPLAY

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

766872.1                          1

TECHNOLOGY CO., LTD.;
INTERNATIONAL DISPLAY
TECHNOLOGY USA, INC; AU
OPTRONICS; AU OPTRONICS
CORPORATION AMERICA; CHUNGHWA
PICTURE TUBES LTD., and HANNSTAR
DISPLAY CORPORATION,

          Defendants.

Plaintiff, by his undersigned attorneys, individually and on behalf of the class described below, brings this civil action against Defendants for damages and injunctive relief under the antitrust laws of the United States. Plaintiff alleges that Defendants conspired to fix, raise, maintain, and stabilize the price of TFT-LCD Products, as defined below, sold in the United States during the Class Period. As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class paid higher prices for TFT-LCD Products than what they would have paid in a competitive market.

## I. JURISDICTION AND VENUE

1.     Plaintiff brings this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit and reasonable attorneys' fees, premised on Defendants' violation of the Sherman Act, 15 U.S.C. § 1.

2.     The Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15 and 26, and 28 U.S.C. § 1331 and 1337. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside in this District.

3.     By virtue of their nationwide contacts and activities as well as their contacts with the State of California, Defendants are subject to the jurisdiction of this Court. Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

**II. DEFINITIONS**

4.    The relevant time period is at least January 1, 1998 through at least December 31, 2005 ("Class Period").

5.    The term "TFT-LCD Products," as used in this complaint, means Thin Film Transistor Liquid Crystal Display products used in televisions, computer monitors, mobile phones, personal digital assistants ("PDAs") and other electronic devices.

6.    References made herein to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

**III. PLAINTIFF**

7.    Plaintiff Joseph T. Piscitello resides at 869 Meetinghouse Road, Rydal, PA 19046. Plaintiff purchased TFT-LCD Products directly from one or more Defendants during the Class Period and suffered injury as a result of Defendants' unlawful conduct.

**IV. DEFENDANTS**

8.    Defendant LG.PHILIPS LCD CO., LTD. ("LG.PHILIPS") is a Korean entity with its principal place of business at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea. Defendant LG.Philips is a joint venture created in 1999 by LG Electronics and Royal Philips Electronics NV. LG.Philips maintains sales offices in California, Illinois, North Carolina and Texas. LG.Philips "is the global leader in the development and manufacture of TFT-LCD panels for televisions, monitors, notebooks and emerging mobile applications." (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/com/com310_j_e.jsp>). During the Class Period, LG.Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

9.    Defendant LG.PHILIPS LCD AMERICA, INC. is a business entity organized under the laws of California with its principal place of business at 150 East Brokaw Rd., San Jose, California. LG.Philips America, Inc. is a wholly-owned and controlled subsidiary of LG.Philips LCD Co., Ltd. During the Class Period, LG.Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

10.     Defendants LG.Philips LCD Co. Ltd. and LG.Philips LCD America, Inc. are referred to collectively herein as "LG.Philips."

11.     Defendant SAMSUNG ELECTRONICS COMPANY LTD. is a Korean company with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.  During the Class Period, Samsung Electronics Co. Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

12.     Defendant SAMSUNG ELECTRONICS AMERICA, INC. is a company organized under the laws of New York with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey.  Samsung Electronics America, Inc. is a wholly-owned and controlled subsidiary of defendant Samsung Electronics Co., Ltd.  During the Class Period, Samsung Electronics America, Inc. sold and distributed TFT-LCD Products to customers throughout the United States.

13.     Defendants Samsung Electronics Company Ltd. and Samsung Electronics America, Inc. are referred to collectively herein as "Samsung."

14.     Defendant SHARP CORPORATION is a Japanese company with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan.  During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

15.     Defendant SHARP ELECTRONICS CORPORATION is a company organized under the laws of New York with its principal place of business at Sharp Plaza, Mahwah, New Jersey.  Sharp Electronics Corporation is a wholly-owned and controlled subsidiary of Sharp Corporation.  During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

16.     Defendants Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

17.     Defendant TOSHIBA CORPORATION ("Toshiba") is a Japanese company with its principal place of business at 1-1 Shibaura, 1-chrome Minato-ku, Tokyo 105-8001, Japan.

1    During the Class Period, Toshiba Corporation manufactured, sold and distributed TFT-LCD

2    Products to customers throughout the United States.

3        18.    Defendant MATSUSHITA ELECTRIC INDUSTRIAL CO. is a Japanese company

4    with its principal place of business at 1006 Oaza Kadoma, Kadoma City, Osaka 571-8501, Japan.

5    During the Class Period, Matsushita Electric Industrial Co. manufactured, sold and distributed

6    TFT-LCD Products to customers throughout the United States.

7        19.    Defendant PANASONIC CORPORATION OF NORTH AMERICA, formerly

8    known as Matsushita Electric Corp. of North America, is a company organized under the laws of

9    Delaware with its principal place of business at 1 Panasonic Way, Secaucus, New Jersey.].

10    Panasonic Corporation of North America is a wholly-owned and controlled subsidiary of

11    Matsushita Electric Industrial Co.   During the Class Period, Panasonic Corporation of North

12    America manufactured, sold and distributed TFT-LCD Products to customers throughout the

13    United States.

14        20.    Defendants Matsushita Electric Industrial Co. and Panasonic Corporation of North

15    America are referred to collectively herein as "Matsushita."

16        21.    Defendant TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO., LTD.

17    ("Toshiba Matsushita") is a Japanese company with its principal place of business at Rivage

18    Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.   Toshiba Matsushita also

19    maintains sales offices in California, Illinois and North Carolina.   According to its web site,

20    Toshiba Matsushita is "positioned as one of the world leaders in the LCD market" and "a leading

21    company in the mobile display field."   (<http://www.tmdisplay.com/tm_dsp/en/profile/power.

22    html>).    During the Class Period, Toshiba Matsushita Display Technology Co., Ltd.

23    manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

24        22.    Defendant HITACHI, LTD. is a Japanese company with its headquarters at 6-6

25    Marunouchi 1-chome, Chiyoda-ku, Tokyo, 100-8280, Japan.   During the Class Period, Hitachi

26    Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United

27    States.

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

23.    Defendant HITACHI AMERICA LTD. is a company organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York. Hitachi America Ltd. a wholly-owned and controlled subsidiary of defendant Hitachi Ltd. During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

24.    Defendant HITACHI DISPLAYS, LTD. is a Japanese company with its principal place of business at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo, 101-0022, Japan.  As stated on its web site, "[i]n 2002, all the departments . . . concerned with the display business of Hitachi, Ltd. were spun off into a separate company called Hitachi Displays, Ltd.  As a specialized display manufacturer, Hitachi Displays, Ltd. aims to contribute globally by providing the world's best displays." (<http://www.hitachi-displays.com/en/company/outline/>).  During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

25.    Defendant HITACHI ELECTRONIC DEVICES (USA), INC. is a company organized under the laws of Delaware with its principal place of business at 575 Mauldin Road, Greenville, South Carolina.  Hitachi Electronic Devices (USA), Inc. a wholly-owned and controlled subsidiary of Hitachi Ltd.  During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

26.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi."

27.    Defendant IPS ALPHA TECHNOLOGIES, LTD. ("IPS Alpha") is a Japanese entity with its principal place of business at 3732 Hayano, Mobara-city, Chiba Prefecture, Japan. IPS Alpha was formed in 2004 as a joint venture between Hitachi Displays, Ltd., Toshiba Corporation and Matsushita Electric Industrial Co., Ltd.  During the Class Period, IPS Alpha manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

28.    Defendant EPSON IMAGING DEVICES CORPORATION ("Epson Imaging") is a Japanese company with its principal place of business at 6925 Toyoshina Tazawa, Azumino-shi,

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1  Nagano, Japan.  According to its web site, Epson Imaging Devices Corporation, formerly known

2  as Sanyo Epson Imaging Devices Corporation, was originally established as a joint venture

3  between Seiko Epson Corporation and Sanyo Electric Co., Ltd.   The company commenced

4  operations in October 2004 and on December 28, 2006 changed its name upon becoming a

5  wholly-owned    Epson    subsidiary.        (<http://www.epson-imaging.com/e/company/outline/>).

6  During the Class Period, Epson Imaging manufactured, sold and distributed TFT-LCD Products to

7  customers throughout the United States.

8      29.    Defendant NEC CORPORATION is a Japanese company with its principal place of

9  business at 7-1, Shiba 5-chome, Minato-ku, Tokyo, 108-8001, Japan.  During the Class Period,

10  NEC Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout

11  the United States.

12      30.    Defendant NEC LCD TECHNOLOGIES, LTD. is a Japanese company with its

13  principal place of business at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kangawa, 211-8666,

14  Japan.   NEC LCD Technologies, Ltd. is a wholly-owned and controlled subsidiary of NEC

15  Corporation.   During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and

16  distributed TFT-LCD Products to customers throughout the United States.

17      31.    Defendant NEC ELECTRONICS CORPORATION is a Japanese company with its

18  principal place of business at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa, 211-8668,

19  Japan.  During the Class Period, NEC Electronics Corporation manufactured, sold and distributed

20  TFT-LCD Products to customers throughout the United States.

21      32.    Defendant NEC ELECTRONICS AMERICA, INC. is a company organized under

22  the laws of California with its principal place of business at 2880 Scott Boulevard, Santa Clara,

23  California.  NEC Electronics America, Inc. is a wholly-owned and controlled subsidiary of NEC

24  Electronics Corporation. During the Class Period, NEC Electronics America, Inc. manufactured,

25  sold and distributed TFT-LCD Products to customers throughout the United States.

26      33.    Defendant NEC DISPLAY SOLUTIONS OF AMERICA, INC. is a company

27  organized under the laws of Delaware with its principal place of business at 500 Park Blvd.,

28  Itasca, Illinois.   NEC Display Solutions of America, Inc. is a wholly-owned and controlled

subsidiary of NEC Electronics Corporation. During the class period, NEC Display Solutions of America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

34.    Defendants NEC Corporation, NEC Electronics Corporation, NEC LCD Technologies, Ltd., NEC Electronics America, Inc. and NEC Display Solutions of America, Inc. are referred to collectively herein as "NEC."

35.    Defendant IDT INTERNATIONAL LTD. is an entity organized under the laws of Bermuda with its principal place of business at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong. During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

36.    Defendant OREGON SCIENTIFIC, INC. is a company organized under the laws of Oregon with its principal place of business at 19861 SW 95th Avenue, Tualatin, Oregon. Oregon Scientific, Inc. is a wholly-owned and controlled subsidiary of IDT International Ltd. During the class period, Oregon Scientific, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

37.    Defendant CHI MEI OPTOELECTRONICS CORPORATION ("Chi Mei") is a Taiwanese company with its principal place of business at No. 3, Sec. 1, Huanshi Road, Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan. During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States

38.    Defendant CHI MEI OPTOELECTRONICS USA, INC. is a company organized under the laws of Delaware with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California. Chi Mei Optoelectronics USA, Inc. is a wholly-owned and controlled subsidiary of Chi Mei Optoelectronics Corporation. During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

39.    Defendant INTERNATIONAL DISPLAY TECHNOLOGY CO., LTD. ("International Display") is a Japanese company with its principal place of business at Nasei

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1   Yaesu Bldg., 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0228, Japan.  International Display is a

2   subsidiary of Defendant Chi Mei Optoelectronics Corporation.   During the Class Period,

3   Defendant International Display Technology Co., Ltd. manufactured, sold, and distributed TFT-

4   LCD Products to customers throughout the United States.

5          40.     Defendant INTERNATIONAL DISPLAY TECHNOLOGY USA INC. is a

6   company with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California.

7   International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics

8   Corporation.  During the Class Period, International Display Technology USA Inc. manufactured,

9   sold, and distributed TFT-LCD Products to customers throughout the United States.

10         41.     Defendant AU OPTRONICS is a Taiwanese company with its principal place of

11  business at No. 1, Li-Hsin Road 2, Hsinchu Science Park, Hsinchu 30078, Taiwan.  During the

12  Class Period, AU Optronics manufactured, sold and distributed TFT-LCD Products to customers

13  throughout the United States.

14         42.     Defendant AU OPTRONICS CORPORATION AMERICA ("AUOCA") is a

15  company organized under the laws of California with its principal place of business at 9720

16  Cypresswood Drive, Suite 241, Houston, Texas.   AUOCA is a wholly-owned and controlled

17  subsidiary of AU Optronics.  AUOCA also maintains a facility in San Diego, California.  During

18  the Class Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers

19  throughout the United States.

20         43.     Defendant CHUNGWA PICTURE TUBES LTD. ("Chungwa") is a Taiwanese

21  company with its principal place of business at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan.

22  During the Class Period, Chunghwa manufactured, sold and distributed TFT-LCD Products to

23  customers throughout the United States.

24         44.     Defendant HANNSTAR DISPLAY CORPORATION ("HannStar") is a Taiwanese

25  company with its principal place of business at No. 480, Rueiguang Road, 12th Floor, Neihu Chiu,

26  Taipei 114, Taiwan.  During the Class Period, HannStar manufactured, sold and distributed TFT-

27  LCD Products to customers throughout the United States.

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

## V.  CO-CONSPIRATORS

45.    Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

46.    Each Defendant acted as the agent or joint venturer of or for other Defendants with respect to the acts, violations and common course of conduct alleged by Plaintiff.

## VI.  CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). The Class is defined as follows:

> All persons and entities who, during the period January 1, 1998 through December 31, 2005, purchased TFT-LCD Products in the United States directly from Defendants or any subsidiaries or affiliates thereof.  Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, and all governmental entities.

48.    Plaintiff does not know the exact size of the Class because such information is in the exclusive control of the Defendants.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the Class is so numerous and geographically dispersed throughout the United States as to render joinder of all Class members impracticable.

49.    There are questions of law or fact common to the Class, including but not limited to the following:

a.    Whether Defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of TFT-LCD Products sold in the United States;

b.    Whether Defendants' conduct caused the prices of TFT-LCD Products sold in the United States to be at artificially high and noncompetitive levels;

c.    Whether Plaintiff and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

      d.     Whether Plaintiff and the Class are entitled to, among other things, injunctive relief.

50.    These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual Class members.

51.    Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased TFT-LCD Products from one or more of the Defendants.

52.    Plaintiff will fairly and adequately represent the interest of the Class in that Plaintiff is a direct purchaser of TFT-LCD Products and has no conflict with any other members of the Class. Furthermore, Plaintiff has retained competent counsel experienced in antitrust and class action litigation.

53.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

54.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

55.    This class action is superior to the alternatives, if any, for fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitious litigation.

## VII. TRADE AND COMMERCE

56.    During the Class Period, each Defendant sold TFT-LCD Products in the United States, in a continuous and uninterrupted flow of interstate commerce and foreign commerce.

57.    During the Class Period, Defendants collectively controlled a significant share of the market for TFT-LCD Products, both globally and in the United States.

58.    The business activities of the Defendants substantially affected interstate trade and commerce.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

# VIII.  FACTUAL ALLEGATIONS

59.    TFT-LCD technology was first invented in the 1960s and was developed for commercial use in laptop computers by 1991.  TFT-LCD products use liquid crystal to control the passage of light.  More specifically:

> The basic structure of a TFT-LCD panel may be thought of as two glass substrates sandwiching a layer of liquid crystal.  The front glass substrate is fitted with a color filter, while the back glass substrate has transistors fabricated on it. When voltage is applied to a transistor, the liquid crystal is bent, allowing light to pass through to form a pixel. A light source is located at the back of the panel and is called a backlight unit. The front glass substrate is fitted with a color filter, which gives each pixel its own color. The combination of these pixels in different colors forms the image on the panel.

> No matter how the design of the TFT panel has been changed or modified, its structures have to contain TFT devices and LC control region (ITO film for transmissive type of LCD, metal such as AI is used for reflective type of LCD).

(<http://www.auo.com/auoDEV/technology.php?sec=tftIntro&ls=en>).

60.    TFT-LCD technology offers numerous benefits over traditional cathode-ray tube (CRT) technology and is used in a wide range of consumer products, including laptop and desktop computer monitors, televisions, and any number of portable electronic devices. (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_02_j_e.jsp>).

61.    There are significant manufacturing and technological barriers to entry in the TFT-LCD industry.  A state-of-the-art fabrication plant can cost upwards of $2 billion and changing technology requires constant research and development investment. (<http://sst.pennnet.com/articles/article_display.cfm?Article_ID=215221&CFID=19635750&CFTOKEN=54020961>).  Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation, available at its website, details some of these high barriers to entry. (<http://www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRelations/IREventsPresentations/downloads/analyst_20051104_1000.pdf >).

62.    Not surprisingly, the industry is highly concentrated and conducive to the kind of collusive activity alleged by Plaintiff.  According to the latest estimates from iSuppli, LG.Philips

had the greatest share of LCD television shipments in the first quarter of 2006 (22.3%), followed by Samsung (20%), Chi Mei (18.7%), AU Optronics (16.8%), and Sharp (13.9%). (<http://www.emsnow.com/ newsarchives/archivedetails.cfm?ID=13338>).

63.    In fact, the TFT-LCD Products industry has experienced significant consolidation during the Class Period, as reflected by AU Optronics' recent acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Electronics, and Fujitsu Limited's transfer of its LCD business to Sharp in 2005. Other industry consolidation includes Defendants Toshiba and Matsushita's merger of their LCD operations into one entity, Defendant Toshiba Matsushita Display Co., Ltd., in 2002. (<http://www.toshiba.com/ taec/news/press_releases/2002/to-188.jsp.>).

64.    There is also a great deal of cross-licensing and many cooperative arrangements in the TFT-LCD industry, creating additional opportunities for collusive activity. By way of example, Defendant Chi Mei has licensing arrangements with Defendants Sharp, AU Optronics, Chughwa, HannStar and Hitachi. During the Class Period, AU Optronics also entered into licensing agreements with Sharp and Samsung.

65.    Other cooperative arrangements include joint ventures, which are common throughout the industry. For example, defendant IPS Alpha was formed in 2004 as a joint venture between Defendants Hitachi, Toshiba, and Matsushita.

66.    Many of the named Defendants have been implicated in other antitrust investigations in recent years. For example, Samsung admitted guilt and paid a $300 million fine following an investigation by the Department of Justice into price-fixing among manufacturers of dynamic random access memory (DRAM) computer chips. In addition, Samsung, Hitachi, NEC, Seiko Epson, Sharp and Toshiba have all acknowledged being contacted by the Department of Justice as part of an ongoing investigation into collusion among manufacturers of static random access memory (SRAM) chips, which are used in a variety of electronic devices.

## IX. DEFENDANTS' ILLEGAL CONDUCT

67.    Defendants and their co-conspirators conspired to artificially raise the prices at which TFT-LCD Products were sold in the United States during the Class Period.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

68.    In December 2006, authorities in Japan, Korea, the European Union and the United States revealed the existence of a comprehensive investigation into anti-competitive activity among TFT-LCD manufacturers. In a December 11, 2006 filing with the Securities and Exchange Commission, Defendant LG.Philips disclosed that officials from the Korea Fair Trade Commission and Japanese Fair Trade Commission had visited the company's Seoul and Tokyo offices and that the United States Department of Justice had issued a subpoena to its San Jose office. (<http://www.lgphilipslcd.com/homeContain/jsp/eng/inv/inv101_j_e.jsp?BOARD_IDX=1187&languageSec=E&kinds=IN1>).

69.    On December 12, 2006, news reports indicated that in addition to LG.Philips, Defendants Samsung, Sharp, Epson Imaging, and AU Optronics were also under investigation. (<http://articles.techrepublic.com.com/2100-10878_11-6142839.html>). The Japanese Fair Trade Commission stated that the probe was related to price fixing. (<http://www.taipeitimes.com/News/biz/archives/2006/12/14/2003340429>).

70.    According to another news report, a spokeswoman for the U.S. Department of Justice ("DOJ") acknowledged that the DOJ "'is investigating the possibility of anticompetitive practices' and is cooperating with foreign authorities." (<http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aVDgKDZLQkvk>). In an additional report, "Min Chun Hong, an analyst at Goodmorning Shinhan Securities, said that if the companies [Samsung and LG.Philips] were convicted, penalties could amount to about 200 billion won, or $216 million, each." (<http://www.iht.com/articles/2006/12/12/business/ flat.php>).

71.    Since at least 1998, the TFT-LCD Product market has not behaved as would be expected of a competitive TFT-LCD Product market free of collusion. Rather, the behavior in this market strongly evidences that the Defendants engaged in a significant price-fixing conspiracy that had the effect of unnaturally stabilizing, and in certain instances, dramatically raising prices.

72.    After initially being introduced into a market, consumer electronics products and their component parts are typically characterized by steady downward pricing trends. However, since at least 1998, the TFT-LCD Product market has been characterized by unnatural price stability and certain periods of substantial upward pricing trends. Defendants have achieved this

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1  price stability and price increases by agreeing to fix prices and to restrict supply through, among

2  other things, decreases in capacity utilization and expansion rates.

3      73.    Industry analysts have taken note of the unusual trends in TFT-LCD Product

4  pricing.  For example, during five consecutive quarters in 2003 and 2004, TFT-LCD Product

5  prices spiked significantly.  One news report indicated that prices for TFT-LCD Products used in

6  notebook computers and computer monitors had risen as much as 21-28% during this time period.

7  (<http://www.physorg.com/news872.html>).

8      74.    During this same time period that TFT-LCD Products were rising in price, the

9  prices being charged by individual TFT-LCD Product manufacturers who are defendants rose by

10 similar amounts.  For instance, Defendant AU Optronics reported that the price for certain of its

11 TFT-LCD Products increased 28 percent between the second quarter of 2003 and the second

12 quarter of 2004.  Similarly, Defendant LG.Philips reported that its pricing increased by 21 percent

13 over the same period.

14     75.    These soaring prices resulted in similarly substantial increases in the profits reaped

15 by the TFT-LCD Product manufacturers.  For example, the eight largest TFT-LCD Product

16 manufacturers reported a collective profit increase of 740 percent between the second quarter of

17 2003 and the second quarter of 2004.  These record profits resulted from Defendants' collective

18 action to fix, raise, maintain or stabilize the price of TFT-LCD Products.

19     76.    In addition, since at least 1998, the TFT-LCD Product market has not followed the

20 basic laws of supply and demand in a competitive market.  In a competitive TFT-LCD Product

21 market, price increases typically occur during shortage periods.  However, since at least 1998,

22 there have been significant price increases in the TFT-LCD Product market during periods of both

23 oversupply and shortage.

24     77.    It is generally acknowledged that demand for consumer electronic products and

25 their component parts typically increases steadily over time.  As would be expected, demand for

26 TFT-LCD Products was steadily and substantially increasing throughout the Class Period.

27     78.    For instance, in June 2006, leading technology consulting firm iSuppli Corporation

28 forecast that 2006 shipments of LCD panels used in televisions would reach 46.7 million units, a

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

74 percent increase from 2005. According to iSuppli, by 2009, sales of LCD televisions (48%) are expected to surpass sales of CRT televisions (42%) for the first time; and by 2010, LCD televisions will account for a majority (56%) of all televisions sold worldwide. (<http://www.emsnow.com/newsarchives/archivedetails.cfm?ID=13338>). Worldwide sales of flat panel televisions, the majority of which use TFT-LCD technology, are expected to surpass $100 billion in 2007. (*See* < http://www.smh.com.au/news/home-theatre/they-are-building-it-but-will-lcd-sales-come/2006/10/09/1160246068541.html?page=2>).

79.    The Defendants were well aware that demand for TFT-LCD Products was steadily and substantially increasing throughout the Class Period.

80.    Defendants took advantage of their knowledge that demand was steadily increasing to manipulate the supply of TFT-LCD Products.    This is one of the ways in which Defendants conspired to fix prices. Plaintiffs manipulated supply by, among other things, agreeing to decrease their capacity utilization and refrain from expanding existing capacity.

81.    Because the bulk of TFT-LCD Product manufacturers' cost is variable and assembly-related, the price of TFT-LCD Products is particularly sensitive to changes in capacity utilization and expansion. In fact, it is well known that in the TFT-LCD Product market, small decreases in capacity utilization have a substantial upward effect on pricing. TFT-LCD Product manufacturers have utilized this knowledge to increase prices through, among other things, restricting supply by decreasing capacity utilization and expansion.

82.    For example, while TFT-LCD Product prices were increasing in late 2003, Defendants AU Optronics, CMO and HannStar were decreasing capacity utilization. Similarly, while TFT-LCD Product prices were increasing in 2003 and 2004, TFT-LCD manufacturers' capacity growth rate was decelerating. Defendants' artificial supply restriction had the effect of fixing, raising, maintaining, or stabilizing TFT-LCD Product pricing at artificially high rates.

83.    At the same time that Defendants were manipulating supply to unnaturally stabilize and substantially increase the price for TFT-LCD Products, their costs to produce these products were decreasing.

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

84.    One of the most significant costs in producing a TFT-LCD Product is the cost of its component parts.  Some of the major component parts for a TFT-LCD Product include the backlight, color filter, PCB polarizer and glass.  Indeed, for large area TFT-LCD Products the costs of these components comprise over two-thirds of the total cost of production.

85.    During the Class Period, the costs of these components as a whole, and individually, have been generally declining, and in some periods at a substantial rate.  Thus, the gap between TFT-LCD Product manufacturers' prices and their costs were unusually high during this period.

86.    For example, during 2001 to 2002, TFT-LCD Product prices increased substantially while the costs to produce these products remained flat or decreased.  Similarly, during 2003 to 2004, TFT-LCD Product prices again increased by a substantial amount, while costs remained flat or decreased.  This economic aberration is the result of Defendants' conspiracy to raise, fix, maintain or stabilize the prices of TFT-LCD Products.

87.    Further evidence of the Defendants' continued collusive activity includes a June 13, 2006 article entitled "Are LCD makers planning to manipulate supply?"  That article suggested that, due to manufacturers expanding production ahead of demand, an "extreme over-supply situation" was leading to "talk in the industry . . . that the manufacturers are looking to create an artificial [shortage of LCD displays]."  The article went on to note: "At a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively look at cutting back on production from 100 percent to at least 85 percent.  Otherwise, if  supply  outpaces  demand,  manufacturers  will  be  forced  to  cut  prices."  (<http://www.infoworld.com/article/ 06/06/13/79145_25OPreality_1.html?source=searchresult>).

88.    Another article attributed the statements at the Taiwan conference to an executive of AU Optronics, and noted that "[s]hould other companies in the LCD panel industry opt to slash production, prices for LCD panels, the screen part of a laptop, flat desktop display, LCD TV and other products, could stabilize.  That would lead to higher prices and fewer visions of Christmas bargains dancing in the heads of many consumers."  (<http://www.infoworld.com/article/ 06/06/12/79223HNphilipscutslcd_1.html?source=searchresult>).

89.    Similarly, a November 3, 2005 Samsung presentation, available on its website, stated that "it was possible to secure a reasonable amount of profit while following industry leaders" during the Class Period. (<http://www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRelations/IREventsPresentations/downloads/analyst_20051104_1000.pdf >).

90.    Defendants, through their officers, directors and employees, effectuated a contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

a.    Participating in meetings and conversations to discuss the prices and supply of TFT-LCD Products in the United States;

b.    Agreeing to manipulate the prices and supply of TFT-LCD Products sold in the United States in a manner that deprived direct purchasers of free and open competition;

c.    Issuing price announcements and quotations in accordance with the agreements reached; and

d.    Selling TFT-LCD Products to various customers in the United States at non-competitive prices.

## X. FRAUDULENT CONCEALMENT

91.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and attempted to confine information concerning the conspiracy to their high-level executives. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

1  litigation was commenced.

2     92.    As a result of the active concealment of the conspiracy by Defendants and their co-

3  conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations

4  herein have been tolled.

5                **XI. CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1**

6     93.    Plaintiff incorporates by reference all the above allegations as if fully set forth

7  herein.

8     94.    Beginning in at least January 1, 1998, the exact date being unknown to Plaintiff and

9  exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered into

10  a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in

11  violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by artificially reducing or eliminating

12  competition in the United States.

13     95.    In particular, Defendants have combined and conspired to raise, fix, maintain or

14  stabilize the prices of TFT-LCD Products sold in the United States.

15     96.    As a result of Defendants' unlawful conduct, TFT-LCD Products prices were

16  raised, fixed, maintained and stabilized in the United States.

17     97.    The contract, combination or conspiracy among Defendants consisted of a

18  continuing agreement, understanding and concerted action among Defendants and their co-

19  conspirators.

20     98.    For purposes of formulating and effectuating their contract, combination or

21  conspiracy, defendants and their co-conspirators did those things they contracted, combined or

22  conspired to do, including:

23          a.    Participating in meetings and conversations to discuss the prices and supply

24              of TFT-LCD Products;

25          b.    Agreeing to manipulate prices and supply of TFT-LCD Products sold in the

26              United States in a manner that deprived direct purchasers of free and open

27              competition;

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104

c.    Issuing price announcements and price quotations in accordance with the agreements reached; and

d.    Selling TFT-LCD Products to customers in the United States at non-competitive prices.

99.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more for TFT-LCD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on his behalf and on behalf of the Class herein, adjudging and decreeing that:

A.    This action may proceed as a class action, with Plaintiff as the designated Class representative and its counsel as Class Counsel;

B.    Defendants have engaged in a contract, combination and conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and that Plaintiff and the members of the Class have been injured in their business and property as a result of Defendants' violations;

C.    Plaintiff and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.    Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.    Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F.    Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

1    G.    Plaintiff and members of the Class receive such other or further relief as may be

2  just and proper.

3                          **XIII.  JURY TRIAL DEMANDED**

4    Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims

5  asserted in this Complaint so triable.

6

7  Dated this eighth day of May, 2007.          Respectfully submitted,

8

9                                _____

10                               Bruce L. Simon
                                 Esther L. Klisura
11                               PEARSON, SIMON, SOTER, WARSHAW &
                                 PENNY LLP
12                               44 Montgomery Street, Suite 1200
                                 San Francisco, CA 94104
13                               Telephone:  (415) 433-9000
                                 Facsimile:  (415) 433-9008
14                               bsimon@psswplaw.com

15                               Michael D. Hausfeld
                                 Richard A. Koffman
16                               Brian A. Ratner
                                 Kathleen M. Konopka
17                               COHEN, MILSTEIN, HAUSFELD
                                   & TOLL, P.L.L.C.
18                               1100 New York Avenue, NW,
                                 Suite 500 West Tower
19                               Washington, D.C.  20005
                                 Telephone:  (202) 408-4600
20                               Facsimile:  (202) 408-4699
                                 mhausfeld@cmht.com
21                               rkoffman@cmht.com
                                 bratner@cmht.com
22                               kkonopka@cmht.com

23                               Attorneys for Plaintiffs and the Proposed Class

24

25

26

27

28

PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94104